# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MICHAEL LUCON FAVREAU,<br>Appellant, | DOCKET NUMBER<br>SF-0752-12-0547-I-6 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>Agency. | DATE: March 9, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

David P. Clisham, Esquire, San Francisco, California, for the appellant.

David Michael Tucker and Douglas W. Hales, Fort Hunter Liggett,
  California, for the agency.

**BEFORE**
Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

## FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which dismissed the appeal as moot. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.[3]

## BACKGROUND

¶2      At the time of the removal action upon which this appeal is based, the appellant was employed as a Police Officer, GS-0083-06, by the U.S. Army Installation Management Command, Directorate of Emergency Services, Police/Provost Marshall Division, Law Enforcement Branch, Camp Parks, California. *Favreau v. Department of the Army*, MSPB Docket No. SF-0752-12-0547-I-1, Initial Appeal File (IAF), Tab 5, Subtab 4a. The appellant entered on duty on November 11, 2007. *Id.*, Subtab 4n. The vacancy announcement for his position required the incumbent to "have or be able to complete an approved Law Enforcement Academy training within 24 months from the date of employment," and Army Regulation 190-56 imposed a requirement to attend "accredited" academy training unless such requirement was waived. *Id.*, Subtabs 4k, 4o. Local management sought a training waiver for the appellant, but the agency's Office of the Provost Marshal General denied the waiver request and also an

---

[3] We modify the initial decision to address the issue of disability discrimination de novo.

appeal of the denial because the appellant lacked sufficient recent law enforcement experience. *Id.*, Subtab 4i. Based on his inability to obtain the waiver and his failure to attend academy training within 2 years of his original hire date, the agency removed the appellant effective January 1, 2011. *Favreau v. Department of the Army*, MSPB Docket No. SF-0752-11-0273-I-1 (*Favreau I)*, Initial Decision (ID) at 2-4 (Feb. 3, 2012).

¶3      The appellant appealed the removal, which the administrative judge reversed on the ground of a due process violation. *Favreau I* ID at 1, 16. However, the administrative judge found that the appellant did not prove any of his affirmative defenses. *Favreau I* ID at 16. The Board affirmed the administrative judge's decision, and the agency restored the appellant effective January 1, 2011. *Favreau I* Final Order (Feb. 21, 2014).

¶4      The appellant returned to duty on February 26, 2012. On February 27, 2012, the agency issued a Notice of Proposed Removal, proposing his removal for failure to maintain a basic condition of employment. IAF, Tab 5, Subtab 4f. The appellant was removed effective April 30, 2012, and he filed this appeal. *Id.*, Subtab 4c; IAF, Tab 1.

¶5      At the parties' request, the administrative judge dismissed this appeal without prejudice five times[4] while the parties awaited the Board's decision in *Favreau I* and tried to settle the appeal before resuming adjudication. On the first day of the hearing, the parties entered into settlement discussions. *Favreau v. Department of the Army*, MPSB Docket No. SF-0752-12-0547-I-6, Refiled Appeal File, (I-6 RAF), Tab 41, Initial Decision (I-6 ID) at 3. The parties did not reach a settlement, but the agency rescinded the removal and returned the appellant to duty on May 18, 2015. I-6 RAF, Tab 11 at 16. The agency moved to dismiss the

---

[4] The administrative judge's several initial decisions dismissing the appeals without prejudice are as follows: IAF, Tab 12; *Favreau v. Department of the Army*, MPSB Docket Nos. SF-0752-12-0547-I-2, Refiled Appeal File, Tab 4; SF-0752-12-0547-I-3, Refiled Appeal File, Tab 7; SF-0752-12-0547-I-4, Refiled Appeal File, Tab 41; SF-0752-12-0547-I-5, Refiled Appeal File, Tab 9.

appeal, arguing that it was moot because the appellant had been returned to his prior duties and he had been provided all of the relief to which he would have been entitled had he prevailed. I-6 RAF, Tabs 8, 13-15. The administrative judge held the second day of the hearing to address issues related to the agency's obligation to provide the appellant with full relief and to hear evidence and argument regarding the appellant's affirmative defenses of disability discrimination and retaliation for engaging in equal employment opportunity (EEO) activity. I-6 RAF, Tabs 21, 30, 33.

¶6        In an initial decision, the administrative judge found that the agency showed by preponderant evidence that it had completely rescinded the appellant's removal and granted him full relief in the matters related to his reinstatement, back pay, and benefits. I-6 ID at 5-18. The administrative judge found that the appellant failed to prove his affirmative defenses of discrimination and retaliation. I-6 ID at 18-28. Because the appellant would not be able to receive damages based on these defenses, and the agency provided all the other relief to which he was entitled, the administrative judge declined to rule on the appellant's affirmative defenses of retaliation for union activity, harmful procedural error, and denial of minimum due process. I-6 ID at 28. The administrative judge likewise declined to consider the appellant's whistleblower claim. I-6 ID at 28-29. He found the appellant's claim for attorney fees to be premature. I-6 ID at 18. The administrative judge thus dismissed the appeal as moot. I-6 ID at 29-30. The appellant filed this petition for review. Petition for Review (PFR) File, Tab 3.

Applicable Law

¶7        An agency's rescinding a final decision divests the Board of jurisdiction over an otherwise appealable action if the agency returns the appellant to the status quo ante. In such cases, the appeal is rendered moot. *Ryan v. Department of the Air Force*, 117 M.S.P.R. 362, ¶ 9 (2012) (stating that an appeal is rendered moot when an appellant receives all of the relief that he could have received if the

matter had been adjudicated and he had prevailed).  An appealable adverse action cannot be rendered moot by an agency's rescinding the action unless the employee has received all the back pay to which he is entitled.  *Sredzinski v. U.S. Postal Service*, [105 M.S.P.R. 571](), ¶ 7 (2007).  Additionally, an agency must remove all references to such action from the employee's personnel records when it cancels an action.  *Gonzales v. U.S. Postal Service*, [44 M.S.P.R. 517](), 519-20 (1990).

Reinstatement

¶8      Here, the administrative judge found in the initial decision that the appellant, by his own admission, was reinstated to the status quo ante because he was returned to the same GS-0083-06 position he occupied before his removal, and after he completed the required police academy training, he was assigned the full duties of that position.  I-6 ID at 6.  The appellant argues that he should not have been required to complete the police academy training before returning to the position.  PFR File, Tab 3 at 5-7, 10.  He asserts that, had he prevailed on appeal, he would have been found to have met the conditions of employment and would not have been required to attend the academy.  *Id.* at 10.  He argues that the administrative judge's findings "ratif[y] the [a]gency's failure to regard [him] as having prevailed on his appeal."  *Id.*  He additionally points out that local management testified that he had met the training requirements for his position when he was hired.  *Id.* at 7-8.

¶9      We find that, whether local managers and the appellant believed his prior training was sufficient, he nevertheless completed additional police academy training after his reinstatement and was fully reinstated to the duties of his position.  Hearing Transcript (HT) (April 8, 2016) at 124-26 (testimony of the appellant).  The Board cannot grant him any further relief in this respect.

Special Assignments

¶10    The appellant argued on appeal that he was not reinstated to two special assignments in which he served before his removal:  unit armorer and traffic accident investigator.  Based on undisputed testimony, the administrative judge found that these were merely collateral duties to which he was assigned, which were "neither permanent nor intrinsic to [his] position as a police officer."  I-6 ID at 7-9.  The administrative judge further noted that the appellant had not been certified to serve as a traffic investigator, no permanent position had been funded for these assignments, and the armorer position was entirely informal in nature.  I-6 ID at 8.  The appellant argues on review that he should have been reinstated to these collateral duties.  He asserts that the initial decision adopts the agency's position on the issue, and its failure to reassign him to these "appointments" constitutes continuing animus against him.  PFR File, Tab 3 at 11-12.

¶11    We find that the administrative judge did not err in determining that these assignments were collateral duties.  In fact, the appellant admitted that the unit armorer duties were collateral in nature.  *Id.* at 11; *see also Favreau v. Department of the Army*, MPSB Docket No. SF-0752-12-0547-I-5, Refiled Appeal File (I-5 RAF), Tab 34 at 12.  Moreover, the appellant's traffic investigator duties could have been only collateral because the agency was not authorized to fill a permanent Traffic Investigator position.  HT (April 8, 2016) at 14-18, 25 (testimony of the Emergency Services Director); I-5 RAF, Tab 32 at 47-49.  Further, the appellant lacked the specialized training required to fill a permanent Traffic Investigator position.  HT (April 8, 2016) at 14-20 (testimony of the Emergency Services Director); I-5 RAF, Tab 32 at 48.  The appellant's arguments are thus unavailing.

Promotion

¶12    Next, the administrative judge found that the appellant failed to nonfrivolously allege facts clearly establishing that he would have been promoted during the period of his absence from May 1, 2012, through May 15, 2015, or that

such a promotion was mandated by law. I-6 ID at 9-10. The administrative judge particularly noted that the appellant had not completed the required police academy training at the time during which any promotional opportunity might have arisen. *Id.*; *see Harris v. Department of Agriculture*, 50 M.S.P.R. 686, 697 (1991) (holding that, in the absence of a law requiring a promotion or facts establishing a clear entitlement to a retroactive promotion, an employee is not automatically entitled to a promotion upon reinstatement). The administrative judge found that, at best, the appellant was simply asserting that he should have been selected over other persons in various competitive promotion opportunities that arose during the relevant time period. I-6 ID at 10.

¶13    On review, the appellant reiterates the argument he made during the compliance proceedings related to *Favreau I*—that lesser-qualified individuals were hired or promoted to higher-graded positions during his absence. PFR File, Tab 3 at 12-13; *Favreau v. Department of the Army*, MSPB Docket No. SF-0752-11-0273-C-2, Compliance Initial Decision at 11-12 (May 6, 2016); *Favreau v. Department of the Army*, MSPB Docket No. SF-0752-11-0273-C-2, Compliance Petition for Review File, Tab 1 at 10-11. These matters relate to the time period before the appellant's April 2012 removal and not to the post-removal period that would be relevant in the instant appeal.[5] We find, therefore, that the appellant has not shown that he would have been promoted, or any promotion would have been mandated by law, during the period following his second removal.

Back Pay

¶14    In addition, the administrative judge found that the appellant had been paid all of the back pay owed to him for the period between May 1, 2012, and May 16, 2015. I-6 ID at 10-12. On review, the appellant asserts that he cannot be sure he received all such pay because the agency's information regarding back pay was

---

[5] The administrative judge noted that the appellant raised several issues regarding agency actions prior to his April 2012 removal. The administrative judge found that these issues were beyond the scope of this appeal. I-6 ID at 10 n.2.

confusing, incomplete, and inaccurate. PFR File, Tab 3 at 13-15. He further asserts that the agency did not provide him with timesheets to verify that he was awarded back pay for the pertinent pay periods. *Id.* at 14.

¶15    In reaching his decision, the administrative judge relied on an affidavit from the civilian branch chief at the Defense Finance and Accounting Services (DFAS) who processed the appellant's back pay award. I-6 ID at 10-12. The affidavit describes in detail the processing of the award. *Favreau v. Department of the Army*, MPSB Docket No. SF-0752-12-0547-I-5, Refiled Appeal File (I-5 RAF), Tab 13 at 22-25. The administrative judge additionally relied upon a DFAS-generated spreadsheet, which shows the number of regular and overtime hours, special payments, night differentials, holiday pay, and the hourly rate for each pay category for every pay period for which an award was made. *Id.* at 27-33. The record also includes a copy of the appellant's leave and earnings statement for November 12, 2015, which shows that he received the back pay award. *Id.* at 19-20. The record additionally includes a sworn statement from the supervisory official responsible for ensuring that the appellant's back pay was processed correctly. She explained that she had prepared timesheets for the back pay period and presented them to the appellant for his consideration. I-5 RAF, Tab 7 at 8-10. She appended related email messages to her statement. We find that these messages indicate that the appellant, despite his argument to the contrary, received and reviewed the applicable timesheets. *Id.* at 11-18. The appellant's argument that he did not receive all of the back pay the agency owed him is thus unavailing.

Overtime Pay

¶16    The administrative judge found, moreover, that the method the agency used for computing the appellant's overtime during the back pay period was reasonable and workable. I-6 ID at 13-16. The administrative judge was not persuaded by the appellant's assertion that the agency should have matched his average overtime earnings for 2008 and 2009 when calculating his overtime for the period

from May 1, 2012, to May 15, 2015. The administrative judge determined that the amount of available overtime changed from year to year based on multiple factors, including the agency's budget and the willingness of other personnel to work overtime. *Id.* He further determined that the policy authorizing overtime pay for changing into and out of uniform at the beginning and ending of shifts, i.e., "donning and doffing" pay, was not implemented until May 3, 2015, the last pay period prior to the appellant's return to duty, and the appellant had been paid appropriately for that pay period. I-6 ID at 16. The administrative judge found that the appellant's other assertions about the agency's overtime pay practices were vague and unsupported. *Id.*

¶17 On review, the appellant argues that the administrative judge erred in upholding the agency's calculation of overtime based on his "wrongful relegation to the status of 'security guard' beginning in March 2010." PFR File, Tab 3 at 15. The appellant contends that he had completed two police academies prior to entering on duty, had been "routinely instructed . . . to engage in law enforcement activities as a police officer despite the erroneous designation of security guard," and was still paid as a police officer. *Id.* He argues that his overtime should have been calculated based on his service as a police officer during 2008 and 2009, and not by averaging the overtime that other employees earned during his absence. *Id.* at 15-16.

¶18 Agency regulations, however, allow for "[t]he method of computing overtime . . . [to] be based on the average number of overtime hours worked by fellow employees occupying similar positions during the same period." Department of Defense (DOD) Financial Management Regulation (FMR) 7000.14-R, vol. 8, ch. 6, ¶ 060404D. Noting that overtime can vary greatly for a variety of reasons, the agency acknowledged that the appellant's overtime hours dropped significantly after he was assigned to security guard duties. I-5 RAF, Tab 13 at 7-8. The agency further acknowledged that the average number of overtime hours was likely insufficient to compensate the

appellant at the rate of overtime pay he received as a police officer prior to 2010. *Id.* at 7. For these reasons, the agency explained, it matched the appellant's overtime pay to that of the top earner in each calendar year. *Id.* at 7-8. The Board will not nullify the method employed by an agency in calculating a back pay award absent a showing that the method was unreasonable or unworkable. *Broadnax v. U.S. Postal Service*, 35 M.S.P.R. 219, 226 (1987). The appellant has not made such a showing, and, in any event, we agree with the administrative judge's assessment that the agency's approach was both reasonable and workable. I-6 ID at 15-16.

Deductions for Interim Earnings

¶19 The administrative judge further found that the agency properly deducted $35,796.83 from the back pay award, representing the appellant's interim earnings during 2012 through 2014, because these earnings did not constitute additional or "moonlight" employment under 5 C.F.R. § 550.805(e)(1). I-6 ID at 16-18. The agency asserted that the appellant's earnings as a security guard with his interim employer, Strategic Threat Management, did not represent additional or "moonlight" employment because his superiors specifically directed him to stop such work in 2008. I-5 RAF, Tab 13 at 9. Agency regulations provide that the "only earnings from other employment that may not be deducted from back pay are earnings from outside employment the employee already had before the period of wrongful suspension or separation." DOD, FMR 7000.14-R, vol. 8, ch. 6, ¶ 060405C.

¶20 On review, the appellant argues that his interim earnings should not have been deducted as they constituted work as a security guard, and not as a police officer. PFR File, Tab 3 at 16. The appellant contends that the agency's rescinding his removal meant he had prevailed on appeal and that the agency was required to have allowed him outside or "moonlight" employment before his removal. *Id.* The appellant has not shown, however, that he could or would have

worked at his outside employment had he not been removed. *See Weber v. Department of Justice*, [88 M.S.P.R. 345](#), ¶ 11 (2001). Interim employment must be in the same position as the pre-removal outside employment, and it must have been approved by the agency. *Id.* It is undisputed that the agency forbade the appellant from working as a security guard for Strategic Threat Management. I-5 RAF, Tab 15, Subtab 6 at 37. The appellant was only able to work at Strategic Threat Management *because* he had been removed. Further, rescinding the appellant's removal has no bearing on this issue. As the appellant admitted in his affidavit, the agency ordered him not to work as a security guard in 2008 because it posed a conflict of interest with his agency employment. I-5 RAF, Tab 15 at 37.

Disability Discrimination

¶21      When the Board reverses a case on due process grounds without reaching the merits of the underlying action, it must nevertheless render a decision on the affirmative defense of disability discrimination. *Favreau I* ID at 16; *see* [5 U.S.C. § 7702](#)(a)(1); *Schibik v. Department of Veterans Affairs*, [98 M.S.P.R. 591](#), ¶ 11 (2005); *Marchese v. Department of the Navy*, [32 M.S.P.R. 461](#), 464 (1987), *overruled on other grounds by Abbott v. U.S. Postal Service*, [121 M.S.P.R. 294](#) (2014). The administrative judge made findings on the appellant's discrimination claims in *Favreau I*. *Favreau I* ID at 26-31. The administrative judge concluded that the appellant failed to prove that either of his claimed impairments substantially limited one or more major life activities. *Id.* at 28-29. The Board affirmed the initial decision without modifying those findings. *Favreau I* Final Order at 2.

¶22      In the instant appeal, the appellant reasserted his affirmative defense of disability discrimination. *Favreau v. Department of the Army*, MPSB Docket No. SF-0752-12-0547-I-3, Refiled Appeal File (I-3 RAF), Tab 28 at 13-20. He alleged that his removal constituted disability discrimination based on disparate treatment and the agency's failure to accommodate his disability. I-3 RAF,

Tab 20 at 14. Relying on the findings in *Favreau I*, the administrative judge found the appellant's discrimination claim to be barred by collateral estoppel. I-6 ID at 21-22. The administrative judge found that the issue of whether the appellant was a qualified person with a disability was identical to the issue already litigated in *Favreau I*, the determination on that issue was necessary to the resulting judgment, and the appellant was fully represented.[6] I-6 ID at 22.

¶23    The administrative judge also considered the appellant's claim that the agency's action was motivated at least in part by the proposing official's perception that he was disabled and thus unable to meet the physical requirements for attending police academy training after he proffered the results of an alternative to the physical agility test (PAT) required for admission to the academy. I-3 RAF, Tab 28 at 17. Without relying on the doctrine of collateral estoppel, the administrative judge rejected the appellant's claim that the agency regarded him as disabled on grounds similar to the Board's rejecting the same claim in *Favreau I*. I-6 ID at 22-23; *Favreau I* Final Order at 11-12.

¶24    On review, the appellant asserts that the administrative judge should not have relied on the doctrine of collateral estoppel because the second removal action was separate and distinct from the first removal action; that is, the deciding official and some of the evidence was different, additional evidence was available establishing that his prior police academy courses met the training requirements for his position, and he had passed an alternative PAT, which qualified him to

---

[6] The elements of collateral estoppel are as follows: (1) the issue must be identical to that involved in the prior action; (2) the issue was actually litigated in the prior action; (3) the determination on the issue in the prior action was necessary to the resulting judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action, either as a party to the earlier action or as one whose interests were otherwise fully represented in that action. *Kavaliauskas v. Department of the Treasury*, 120 M.S.P.R. 509, ¶ 5 (2014). The appellant objected to the administrative judge's citing these cases, asserting that they are factually inapposite. PFR File, Tab 3 at 19. We cite these cases not for their factual similarity to the instant appeal, but, instead, because they articulate the standard for determining whether collateral estoppel may apply.

attend the police academy. PFR File, Tab 3 at 19-20. He also reiterates his assertion that the agency's action was motivated in part by the proposing official's perception that he was disabled. *Id.* at 17-18. The appellant additionally argues that the administrative judge failed to address the issue of whether he had a record of an impairment that substantially limited one or more major life activities. *Id.* at 17; *see* 42 U.S.C. § 12102(1).

¶25    We agree with the administrative judge's application of the doctrine of collateral estoppel. Alternatively, though, assuming arguendo that the appellant is correct in arguing that the administrative judge erred in not reviewing his discrimination allegations as to the second removal, as the record is complete on this issue we may consider this claim now. The appellant's claim arises under the Rehabilitation Act of 1973. *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 8 (2010). The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 35. The standards under the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act of 2008 (ADAAA), have been incorporated by reference into the Rehabilitation Act and the Board applies them to determine whether there has been a Rehabilitation Act violation. *Id.*

¶26    The ADAAA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 18 (2010). The ADAAA defines "qualified individual," in part, as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An employer is also required to provide reasonable

accommodations to an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5). Thus, both a claim of disability discrimination based on an individual's status as disabled and a claim based on an agency's failure to reasonably accommodate that disability require that the individual be "qualified." *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 28-29.

¶27      An individual may prove that he has a disability by showing that he suffers from a physical or mental impairment that substantially limits one or more major life activities; has a record of such impairment; or is regarded as having such impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1). An impairment is considered a disability if it substantially limits an individual's ability to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, eating, lifting, bending, concentrating, communicating, and working. 29 C.F.R. § 1630.2(i)(1)(i). Major life activities also include the operation of major bodily functions. 29 C.F.R. § 1630.2(i)(1)(ii).

¶28      Whether an impairment substantially limits a major life activity requires an individualized assessment. 29 C.F.R. § 1630.2(j)(1)(iv). Although not every impairment will be limiting, an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity to be considered substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ii). An impairment that substantially limits one major life activity need not limit other major life activities. 29 C.F.R. § 1630.2(j)(1)(viii). An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii). Determining whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures other than ordinary eyeglasses or contact lenses. 29 C.F.R. § 1630.2(j)(1)(vi).

¶29    The appellant has not presented any evidence of disability other than the evidence he presented in *Favreau I*.  He has alleged two impairing conditions: hypertension, diagnosed in 2008, which requires him to take daily medication and prevents him from running for more than a mile, and a 2010 shoulder injury, which prevents him from being able to perform more than five pushups.  I-3 RAF, Tab 20 at 11-12, Tab 28 at 13-14; HT (April 8, 2016) at 108 (testimony of the appellant).  He cited March 10, 2010 and November 3, 2010 medical clearance letters as evidence that he suffered from the shoulder condition and that he could perform the essential functions of the position.  I-3 RAF, Tab 28 at 14, 54-55, 60.  The November 2010 clearance letter was addressed in *Favreau I*.  *Favreau I* ID at 28.  The appellant did not document his hypertension diagnosis at all, and the November 2010 clearance letter specifies that his condition was temporary and his prognosis for recovery was good.  I-3 RAF, Tab 28 at 54-55.  He alleged only that the shoulder injury affected his ability to do pushups.  *Id.* at 14.  The appellant thus has not shown that either claimed impairment substantially limited his ability to perform any major life activity.  For the same reason, he has not shown that he has a record of having an impairment that substantially limited his ability to perform any major life activity.

¶30    As for the appellant's assertion that the agency failed to grant reasonable accommodations for his conditions, PFR File, Tab 3 at 18, an agency is required to provide such accommodations for the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that an accommodation would create an undue hardship for its business operations.  29 C.F.R. § 1630.9(a).  Reasonable accommodations include modifications to the manner in which the duties of a position are customarily performed to enable a qualified individual with a disability to perform the essential job functions.  *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014).  Even if the appellant had established that he suffered from or had a record of suffering from a substantially limiting impairment to his shoulder, he

would not have been entitled to an accommodation under the regulations in effect at the time of his removal because his impairment was not a long-term condition. I-3 RAF, Tab 28 at 54-55. Under the rules then in effect, individuals with temporary medical restrictions were exempt from the PAT only for the duration of the restrictions. I-5 RAF, Tab 15 at 44. Furthermore, had the agency regarded the appellant as disabled, it would not have been obligated to provide a reasonable accommodation because he did not have a substantially limiting impairment. *Carter v. Department of Justice*, 88 M.S.P.R. 641, ¶ 24 (2001); 29 C.F.R. § 1630.2(o)(4) (a covered entity is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong).

¶31 Because the appellant is not a qualified individual with a disability, he also failed to prove his claim that the agency discriminated against him based on his disability. Moreover, we find that he has not shown that his disability was a motivating factor in the agency's removal decision. To analyze a claim of disability discrimination based on disparate treatment, the Board first determines whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action, and, if so, whether the agency has shown by preponderant evidence that it would have taken the contested action in the absence of the discriminatory motive. *Pridgen*, 2022 MSPB 31, ¶¶ 35, 37, 40.[7]

¶32 The appellant has not put forward any evidence to show that the removal action was motivated by the impairments he alleges to be disabling or by any perceived disability. Instead, the agency's sole stated rationale for the removal action was his failure to attend police academy training. Neither the proposal

---

[7] Because we affirm the administrative judge's finding that the appellant failed to show that any prohibited consideration was a motivating factor in the agency's actions, we need not resolve the issue of whether the appellant proved that discrimination or retaliation was a "but-for" cause of the agency's decisions. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

notice nor the decision notice mention his medical conditions.  IAF, Tab 5, Subtabs 4c, 4f; *cf. Southerland*, [119 M.S.P.R. 566](), ¶¶ 16, 22 (finding that the deciding official's statements in the decision letter regarding the appellant's inability to fulfill the full range of his duties *owing to his medical condition* constituted direct evidence of a discriminatory motive), *overruled on other grounds by Pridgen* , [2022 MSPB 31](), ¶¶ 44-47.  In his deposition, the deciding official stated that he based his decision to remove solely on the appellant's failure to attend or waive the police academy attendance requirement.  I-5 RAF, Tab 37 at 11-12.  He explained that he knew of the appellant's shoulder injury, but the injury did not factor into his removal decision.  *Id.* at 12.  Additionally, the proposing official and agency chain of command supported the appellant's request for a waiver of the academy training requirement, as the Board also observed in *Favreau I*.  *Favreau I* Final Order at 12.

¶33     Accordingly, we find that the administrative judge correctly applied the doctrine of collateral estoppel to the appellant's disability discrimination claim.  Alternatively, we find that the appellant failed to establish his affirmative defense of disability discrimination.

Retaliation

¶34     The administrative judge also found the appellant's claim that the agency had retaliated against him for prior EEO activity to be moot because he had not claimed any compensatory damages arising from the alleged retaliation.  I-6 ID at 24.  In the alternative, the administrative judge found that the appellant failed to meet his burden of proving that the agency removed him in retaliation for his prior EEO activity.  I-6 ID at 24-28.

¶35     On review, the appellant objects to the latter finding.  PFR File, Tab 3 at 16-20.  He has, however, offered no direct evidence and only scant circumstantial evidence of retaliation.  Certainly, suspicious timing is not evident

here.[8]  As the administrative judge noted, the activities that the appellant alleges underlay the retaliation predate the January 2011 removal action, and some date from 2007 and 2008.  I-3 RAF, Tab 20 at 83-87.  The appellant also offered no evidence that the deciding official knew about his EEO activity.  The deciding official stated under oath that, in his limited interactions with the proposing official, he did not recall talking about the appellant.  I-5 RAF, Tab 37 at 10.  We thus find the appellant's claim of retaliation to be unavailing.  In any event, because he has not requested damages, the issue is moot as the administrative judge correctly explained in the initial decision.  I-6 ID at 24.

Attorney fees

¶36    Finally, the appellant argues that he has not received the attorney fees to which he is entitled as a prevailing party.  He argues that he has not had an opportunity to request fees in the first instance, and dismissal on grounds of mootness appears to be intended to deprive the Board of jurisdiction to consider his request for fees.  Potential recovery of attorney fees, however, does not prevent the dismissal of an appeal as moot.  *Murphy v. Department of Justice*, 107 M.S.P.R. 154, ¶ 6 (2007).  The Board considers attorney fees in an addendum proceeding after an appellant files a separate petition on that issue.  *See* 5 C.F.R. §§ 1201.201-.205.

¶37    Accordingly, we affirm the initial decision, except as modified by this Final Order.

---

[8] Circumstantial evidence includes evidence of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.  *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 42 (2015), *overruled in part by Pridgen*, 2022 MSPB 31, ¶¶23-25.  It also includes comparator evidence and evidence that the agency's stated reason for its action is pretextual.  *Id.*

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                                    /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.